LAVERN W. GRAY and EDITH R. GRAY, Claimants, *v.*
THE STATE OF NEW YORK.

### Claim No. 2424-A.

(Court of Claims, July, 1921.)

*Court of Claims — flooding of claimant's premises by overflow of the " Oak Orchard" feeder to the western level of the Erie canal — premises owned by claimant and wife as tenants by the entirety — wife filed no notice of intention, as required by statute — state only liable for damages to claimant's share in joint estate.*

CLAIM for damages resulting from defective canal feeder.

Archie C. Ryder, deputy attorney-general, for state.

George R. Sheldon (David Tice, of counsel), for claimants.

WEBB, J. As this court has reached a conclusion in this case somewhat different from the arguments presented by counsel, painstaking as they were, a brief statement of the grounds for our conclusion seems advisable.

Nearly a century ago the state constructed and since that time has maintained a feeder connecting Tonawanda creek with Oak Orchard creek in the town of Alabama, Genesee county, N. Y., the purpose of which feeder was to augment the volume of water in the long, western level of the Erie canal. Incidentally, that construction has enriched the legal literature during the intervening period. This feeder runs northerly of Tonawanda creek four and a half miles, where it makes a junction with Oak Orchard creek. The amount of the water thus supplied to the feeder from Tonawanda creek was controlled by gates, under the supervision of the state's employees. At the time of the flood in question heavy rains had fallen in that locality and practically filled Tonawanda swamp.

About a mile from Tonawanda creek the feeder intercepted a small, natural stream known as " Whitney's creek " which theretofore had an outlet into Tonawanda creek some distance to the west of the feeder. The ancient channel of Whitney's creek is still visible, and such was the testimony on the subject. While the lands in the vicinity are low the run of water was slightly to the west. At the time of the flood in question Oak Orchard creek at the north of the feeder was also in flood, and a portion of its waters crossed its usual channel to the lower lands west and south of the feeder, spreading over a wide

territory, including claimants' farm; these flood waters obstructed to a certain extent the flow of the waters through the feeder.

The Lewiston road crossed the feeder on a bridge about halfway between Tonawanda creek and Oak Orchard creek, and on the 27th day of April, 1913, the waters of the feeder supplied from the gates at Tonawanda creek and augmented by the flood waters of Whitney's creek, overflowed and percolated the west feeder bank at that point, and spread over a wide territory to the west and south, including claimants' farm; damages resulted as described in our findings. These damages resulted principally from the feeder waters overflowing the lands at and in the vicinity of the Lewiston bridge, although the waters were to a considerable extent augmented by the overflow of Oak Orchard, which waters united with the feeder waters, resulting in claimants' damages.

The feeder gates at Tonawanda creek were at this time partly open, and an amount of water equal to that passing through the gates ran into the feeder because of the fact that the construction at the gates and the bulkhead was out of repair, and permitted the escape of waters into the feeder by that means as well as by the open gates; and the court has found that the negligence of the state consisted:

*First.* In admitting and permitting waters from Tonawanda creek to be discharged into the feeder at the time of the flood and when Whitney's creek, an intercepted stream, was over its banks and discharging its waters into the feeder.

*Second.* In failing to provide a sufficient bank upon the west side of the feeder, or to keep the existing bank in such condition that the waters of the feeder at Lewiston bridge would not overflow and percolate its banks and flood claimants' property.

The state was well within its rights in maintaining

the feeder in question. It had the right to intersect the channel of Whitney's creek, but with this right it assumed the liability to maintain a feeder of sufficient size and strength to permit the waters of the feeder arising from these two sources to be restricted to the feeder channel; the right to flow did not involve the right to flood, but did place upon the state the liability for a flood which should arise by reason of the failure of the feeder to contain its waters within its banks.

The state has had much litigation arising from the construction and operation of this feeder. The claim of Jay Ostrander arose on substantially a similar state of facts as that presented in this record. Ostrander owned the farm west of and immediately adjoining the Gray farm, and his claim was passed upon by the Court of Appeals in 192 New York, 415. While that record shows that the principal points urged upon the court on that appeal related to practice, yet the fact remains that there was an award against the state for its negligence in the construction and operation of the feeder, made by this court and affirmed by the Appellate Division, and that judgment was affirmed by the Court of Appeals.

The present action shows continuance of the same conditions respecting the operation of Oak Orchard feeder and the consequent flooding of the Ostrander farm immediately adjoining these claimants' farm. As this court views it, the recovery in the *Ostrander* case for similar injuries arising from the same cause establishes the right of this claimant to recover damages therefor against the State. *Plate* v. *New York Central R. R. Co.*, 37 N. Y. 472.

This claim was originally filed by Lavern W. Gray. The proof showed the flooded premises were conveyed to him and his wife, Edith W. Gray, and that they held them as tenants by the entirety, and that his wife was living at the time of the trial. It did not

appear that the wife filed a notice of intention as required by law; certainly she filed no claim. During the trial, on motion of claimants' counsel, she was made a party to the action, subject to final determination as to her rights in the premises. An examination of the authorities has led us to the conclusion that she could not maintain this action for that reason, and further, that the husband during his wife's lifetime does not possess or control all the land or take all the benefits therefrom, although by the common law such was his prerogative. But the Married Women's Acts of 1848 changed the legal relations of a tenancy by the entirety so that the sole difference between such a tenancy and a tenancy in common, as the law now exists, is the right of the survivor to the possession of the entire estate. After the married women's legislation the wife became entitled to hold, enjoy and possess the property with her husband precisely as if she were a tenant in common; she had the right to maintain an action for damages to the joint property or for interference with the possession or usufruct thereof. *Hiles* v. *Fisher*, 144 N. Y. 306; *Grosser* v. *City of Rochester*, 148 id. 235.

We have accordingly determined that the most claimant Lavern W. Gray can recover in this action is one-half of the damages chargeable to the state. That is the limit of the state's liability to him, and is his share of the joint estate and the damages thereto.

ACKERSON, P. J., concurs.

Award accordingly.